*1215 The opinion of the court was delivered by
Breaux, J.
The plaintiff, a judgment creditor of the defendant for $2500, caused certain property of the defendant to be seized and sold to pay its claim.
On the day of sale the First National Bank filed a third opposition, claiming the proceeds of the real estate.
The opponents were the payees of a promissory note for the sum of $5000, with interest from the 26th day of September, 1891.
This note was secured by mortgage of that date on the property seized.
The balance claimed by the opponents on this mortgage is $3829.91. At the sale, the property was adjudicated to the First National Bank, third opponents, for the price of $4000.
The plaintiff, in answer to opponent’s petition of opposition, denies the existence of their mortgage claim, and. specially pleads that if it ever existed, it has been extinguished.
At a meeting of the directors of the defendant company on the 25th day of September, 1891, a resolution was adopted authorizing the president of the company to execute a mortgage in favor of. the First National Bank of Shreveport to secure the payment of the sum of “ $3756 now due, and the further sum of $1300, to become due upon the real estate and plant of the company,” payable one day after date.
He was also authorized to pledge to the bank as further security the unpaid assessments due by the stockholders to the company.
The secretary and general manager of the company testified that the defendant received the amount of the mortgage, as set forth in the deed of mortgage.
He also testifies that “ after the note and mortgage was executed, I asked Mr. Jacobs, cashier of the First National Bank, to receive these amounts that I collected other than the assessments pledged to the bank, simply for the convenience of the treasurer, to carry on the current business of the company, and not to be applied to the payment of the secured debt. He consented to do so, and I deposited the amounts with that understanding. The amounts deposited, other than the assessments, were drawn out by the treasurer of the Plow Company. This was so agreed when the deposit was made by me, otherwise I would not have put them there. The Hervey Plow *1216 Company had no other resources than collections I made for them, as stated, with which to carry on the business.”
The cashier of the First National Bank says that he is acquainted with the business transactions of the Hervey Plow Company, Limited, with his bank.
That the balance claimed by the bank is the amount due it on the mortgage after allowing the Plow Company all proper credits.
He says: “At the date of the execution of the mortgage and note for $5000, the amount then due this bank by the said company was $3756.98, and in accordance with our agreement and mortgage our bank advanced additional sums, aggregating, October 25, $5034.02.
“ For their convenience they desired to make deposits, but with the distinct understanding that they should be drawn out for the conduct of their business, and that I should not apply deposits to the payment of the note and mortgage, except, as before stated.
The acting president of the company knew that such an agreement was indispensable to the work of the company. Without it the company would have been compelled to stop.
The amount collected on assessments pledged was $1434.77.
Two separate accounts — one “debit,” the other “credit,” were introduced in evidence to show the condition of the open account between the defendant and opponent. They are unexplained by any testimony.
The authority of the secretary and manager to enter into an agreement with the First National Bank is denied. The agreement was an incident of the service due by him to the company. It was in the interest of the company, with the knowledge of the members and directors, and binding without proof of an ordinance adopted to that effect.
Plaintiff’s counsel, in their brief, state “that the balance sued for is made by charging the Plow Company under date of December 18, 1891, with demand note $6000.”
That “ there is no testimony explaining this item,” and that “ it is patent that if the sums collected on assessments and amounting to $1434.77 are credited in this account, they have been applied wrongfully and illegally on the ‘ demand note,’ which was not secured by the mortgage and pledge.”
There is no evidence in the record that this amount was credited on the “ demand note.”
*1217 There is evidence that it was credited on the mortgage.
In the absence of statements clearly setting forth credits and debits and establishing balances, and in the absence of any testimony showing that it was credited differently than stated by plaintiff’s witnesses, the court will not disturb or change the result.
The bank having agreed to receive the deposits of the Hervey Plow Company subject to its checks, and having consented not to apply such deposits to the credit of the mortgage and pledge, was absolutely without right to. such a credit.
In accordance with that agreement it became a depository of the money, and could not transfer it to its own account in satisfaction of the secured indebtedness.
The agreement was legal and unobjectionable. O. O. 2163.
With the consent of the debtor the deposits were placed to the credit of other claims, needful, the witness states, to the plow factory’s operations.
There is no proof nor allegation of fraud or unfair dealing; the plaintiff, a third person, can not require the imputation to be made to a different debt.
The rules of imputation of payments were laid down with admirable clearness in a case in pari materias, that of Bloodworth vs. Jacobs, 2 An. 25, in which it was held that the receipt in which the imputation is made becomes irrevocable unless there has been surprise or fraud.
The disposition of a fund depends upon the agreement or course of dealing.
“ If a factor receive a fund for a particular object under instructions from his principal, no law and no principle of morals will permit him to apply it to any other; and how any different appropriation of it can be required from him by a third person, it is difficult to apprehend, grcvve est fidem fallere. Take a very common case. The current expenses of a plantation must be paid, a man’s family must be supported; and if the factor agree to pay bills or furnish money for these purposes to a planter, and of the proceeds of a crop consigned to him, can he, after procuring the consignment, apply the proceeds to the extinguishment of a previous debt, and set at nought the very condition on which the crop was consigned to him. We have not considered the law to be so.”
The same rule applies to a depositor of money. The banker or *1218 ordinary creditor has no right to set up any claim inconsistent with the terms of agreement.
The judgment appealed from is therefore affirmed at appellant’s-costs.